Points decided.

# ALLEN T. WILLSON *v.* ASAPH CLEAVELAND.

WHEN MOTION MAY BE MADE TO VACATE A DEFAULT.—A motion may be made to set aside a default entered by the Clerk, at any time before final judgment is rendered in the action, notwithstanding the Court has adjourned for the term at which the default was entered, before the motion is made to vacate it.

JURISDICTION TO OPEN DEFAULT.—The Court does not lose jurisdiction to vacate a default because the term at which it was entered has adjourned, unless final judgment has been entered in the action.

WHEN A DEFAULT ENTERED BY THE CLERK IS VOID.—Where the defendant moves to compel the plaintiff to elect which count of the complaint he will go to trial on, and the Court makes an order extending the time to answer until the decision of the motion, and the motion is sustained, a default of the defendant, entered by the Clerk in less than ten days after the plaintiff serves notice of his election, is void, and the Court may set it aside upon suggestion, without any affidavit of merits.

DEFAULT ENTERED BY THE CLERK.—The Clerk, in entering a default, acts merely in a ministerial capacity, and exercises no judicial functions.

SERVICE OF COPY OF AMENDED COMPLAINT.—When the defendant is allowed time to answer until the plaintiff elects on which count of the complaint he will go to trial, the plaintiff should serve a copy of the complaint, with notice of his election.

REDUNDANT MATTER IN A COMPLAINT.—Matters of evidence and unnecessary matters of description of demanded premises, should be stricken out of a complaint to recover possession of land.

SIGNATURE OF ATTORNEY TO ANSWER.—If the answer has the signature of the attorney of record and that of an associate attorney attached to it, the Court will not strike it out. The Court will not try the question whether the signature of the attorney of record was put there by himself, or by his associate without his authority.

SEVERAL DEFENSES SET UP IN ANSWER.—The defendant in ejectment may deny the title of the plaintiff, and also plead the Statute of Limitations.

PROOF OF ABANDONMENT WITHOUT PLEADING IT.—Where the strict legal title is not involved, and the plaintiff relies upon a right to recover founded upon naked possession, the defendant under the general issue, without pleading abandonment, may prove an abandonment of the premises by the plaintiff before the defendant's entry.

CONCLUSIVENESS OF JUDGMENT IN ACTION OF UNLAWFUL DETAINER.—A judgment against a defendant in an action of unlawful detainer for holding over after the termination of a lease, and a restitution under the judgment, do not estop the defendant in an action of ejectment afterwards brought against him by the same plaintiff or his grantee, from proving a prior possession in himself.

WHEN TENANT IS RELEASED FROM THE ESTOPPEL.—The estoppel against a tenant in favor of his landlord's title does not endure longer than the tenant's possession under the lease. When the tenant restores the possession to the landlord, he is released from the estoppel, and if he has a paramount title, may bring it forward.

EVIDENCE TO REBUT PROOF OF ALLEGED ABANDONMENT.—If the plaintiff in ejectment relies on prior possession, and the defendant attempts to prove abandonment by the plaintiff before his entry, the plaintiff should be allowed a wide range in proving facts and circumstances to rebut the alleged abandonment.

APPEAL from the District Court, Third Judicial District, Alameda County.

. Ejectment to recover a tract of land in Alameda County.

The summons was served by the Sheriff in Alameda County, September 27th, 1862, and filed with the Clerk the same day. Alexander Campbell appeared as attorney of record for the defendant, and on the 19th day of November, 1862, an order was made in open Court permitting the plaintiff to file an amended complaint. February 12th, 1863, plaintiff filed an amended complaint containing three counts. February 18th, 1863, A. Campbell, attorney for defendant, gave plaintiff's attorney notice that he would move the Court at the next term to compel plaintiff to elect which of the three counts in the complaint he would abide by, and to strike out the others.

On the same day the Judge made an order allowing the defendant until the determination of the motion to answer the complaint. On the first day of the March term the Court took the motion under advisement, and on the 19th of March granted the motion so far as to compel the plaintiff to elect on which count he would proceed. On the 30th of March the plaintiff filed and served on defendant's attorney a written statement to the effect that he elected to proceed on the first count of the complaint. On the 3d of April the plaintiff's attorney filed an affidavit in the Clerk's office, stating that February 12th, 1863, he had filed and served an amended complaint, and that March 30th, 1863, he had served on defendant's attorney notice that he elected to proceed on the first count of the complaint, and that no-answer or demurrer had been served in the cause, and applied to the Clerk to enter the defendant's default for not answering, whereupon the Clerk entered such default. The March term of the Court continued until April 5th, and the July term following continued from July 20th until July 28th. July 28th, W. W. Crane, as attorney and counsellor, licensed to practice in all the Courts,

25 `

moved the Court, on behalf of defendant, to set aside the default. The motion was made on the papers on file, for the reason that the Clerk had no authority to enter the same.

The Court, on the 16th day of November following, being the first day of the November term, granted the motion, and allowed the defendant to answer. The answer of the defendant was then filed, signed "A. Campbell and W. W. Crane, attorneys for defendant." At this time W. W. Crane's name had not been entered as attorney of record for defendant.

At the November term after the answer was filed the plaintiff moved to strike it out, because not signed by the defendant or his attorney of record, and based the motion on his affidavit that A. Campbell, on the 21st of November, had informed him that he had filed no such answer, and had not authorized any person to file any answer in his name, or sign his name to any answer in the case. The motion was heard on the answer and the affidavit, and the Court denied the same.

The answer contained a denial of the allegations of the complaint, and set up as new matter the Statute of Limitations. The plaintiff then moved the Court to compel the defendant to elect whether he would abide by the denials in the answer or the new matter. The Court denied the motion.

The Court, on the 16th of November, 1863, as a part of the order setting aside the default, and as an addition thereto, made an order striking out that part of the complaint reading as follows:

" The land which the plaintiff seeks to recover in this suit, is all of the land (except that part now in the possession of Asaph Cleaveland) recovered by Jacob F. Miller from the said defendant, McDonald, and the said Asaph Cleaveland, in the County Court of Alameda County, in a suit wherein the said Miller was plaintiff, and the said Cleaveland and McDonald were defendants, begun originally in a Justice's Court of said county, against the said Cleaveland and McDonald, as tenants, holding over after the expiration of their term, and is the same land described in the complaint filed on the 11th day of Sep-

tember, 1856, in this Court, in which the said Powell was plaintiff, and the said Jacob F. Miller was defendant."

The plaintiff averred in his complaint, that on the first day of November, 1856, he was, and for a long time had been and continued to be, until the ouster alleged, the owner and in possession of the demanded premises. The ouster was alleged to have occurred on or about the first of January, 1857.

The plaintiff, to maintain his case, gave in evidence the judgment roll in an action tried in the County Court of Alameda County, on appeal from Justice's Court, in May, 1855, in which Jacob F. Miller was plaintiff, and this defendant, Cleaveland, and one Powell McDonald, were defendants. The action was brought by Miller, as landlord, against Cleaveland and McDonald, as tenants, for holding over after the expiration of their lease, to recover possession of a larger parcel of land, including the demanded premises. Miller recovered judgment, and a writ of restitution was issued and placed in the hands of the Sheriff, who on the 9th day of July, 1856, removed the defendants and placed Miller in possession of the premises. Plaintiff then proved that on the 11th day of October, 1856, Miller sold to him, and put him in possession.

Plaintiff relied on above facts to recover.

Defendant offered testimony to prove that he was in possession of the land, claiming it as his own, in 1852, for some time before the lease was signed under which Miller had recovered judgment, and that after being put out by the Sheriff by virtue of the Act of restitution, in September, 1856, he went back to the land in 1861, and found the same vacant. Defendant also offered testimony that the plaintiff had abandoned the land before defendant returned to it in 1861. To the testimony in relation to abandonment the plaintiff objected, because that defense had not been set up in the answer. The Court overruled the objection.

For the purpose of rebutting defendant's testimony on the question of abandonment, plaintiff offered to prove that he was not skilled in farming, and had been advised by farmers

to let the land lie fallow, and not plough it; and that he, in 1856, and to keep this land in his possession, prepared the draft of a law approved April 8th, 1862, entitled "An Act for the punishment of contempts and trespasses," and kept pressing the matter before the Legislature until its passage. The Court, on defendant's objection, ruled out the testimony as irrelevant.

The jury found a verdict for defendant, who had judgment, and plaintiff appealed both from the judgment and from an order denying a new trial.

*A. T. Willson,* in *pro per.,* for Appellant, made the points that the Court erred in setting aside the default, because the motion to set aside the same was not made until after the adjournment of the term at which it was entered, and cited *Willson* v. *McEvoy,* 25 Cal. 170 ; *People* v. *Rains,* 23 Cal. 128; and *Reese* v. *Mahoney,* 21 Cal. 305 ; and that the motion to compel the defendant to elect which one of his defenses he would rely on should have been granted, because there was a contradiction between the denials and the plea of the Statute of Limitations, and that the answer should have been stricken out, because not signed by the defendant or his attorney of record, and cited *Commissioners of Funded Debt of San José* v. *Younger,* 29 Cal. 147; and that the Court below erred in admitting the defense of plaintiff's abandonment.

He als argued that the judgment in *Miller* v. *Cleaveland and McDonald* was *res judicata* upon the points that Miller was in possession in 1853, and leased to Cleaveland, who entered into possession under him, and was conclusive on the question of Miller's prior possession, and cited *Caperton* v. *Schmidt,* 26 Cal. 479. Upon the question of rebutting testimony to contradict abandonment, he cited *Parker* v. *Heaton,* 7 Cal. 598 ; and *McMinn* v. *Mayes,* 4 Cal. 209.

*W. W. Crane, Jr.,* for Respondent, argued that the motion to compel plaintiff to elect on which count he would proceed, and to strike out, was double, and that the Court when it compelled plaintiff to elect could not decide upon striking out

until after plaintiff had elected, so as to know which count to look into, and that the defendant was not required to answer until the motion to strike out was decided, which was November 16th, 1863, and that the act of the Clerk in entering a default was therefore void. He also argued that the decision on the first branch of the motion was not *res judicata* as to the entire motion, and cited *Banks* v. *American Tract Society*, 4 Sand. 462 ; *Snyder* v. *White*, 6 How. P. R. 325. He contended that the entry of default was absolutely void, and cited *Glidden* v. *Packard*, 28 Cal., 651. He also contended that as respondent was in the acual possession of the demanded premises before the execution of the lease of February 22d, 1853, this prior possession raised the presumption of title in fee in him, and that the acceptance of a lease did not estop him from denying the lessor's title, because he did not enter under the lease, and cited 2 Smith's Leading Cases, pp. 657, 658, 659 ; and *Glen* v. *Gibson*, 9 Barb. 634. He further argued that when respondent delivered up possession to the lessor, whether voluntarily or by judgment of Court, the parties were remitted to their original rights, and respondent could have maintained ejectment on his original prior possession, and cited *James* v. *Landon*, 1 Croke Eliz. 36. On the point of abandonment he cited *Davis* v. *Butler*, 6 Cal. 510 ; *Gluckauf* v. *Reed*, 22 Cal. 468 ; and *Richardson* v. *McNulty*, 24 Cal. 339.

By the Court, SANDERSON, J. :

The motion to set aside the default of the defendant entered by the Clerk, did not come too late because it was made after the adjournment of the term. No final judgment had been rendered and the case was still pending at the time the motion was made. The question is one of jurisdiction, and the District Court does not lose jurisdiction by adjournment before the case has been finally determined. All unfinished business is continued by operation of law until the next term. It is only where the case has been finally disposed of and nothing further remains to be done that the Court loses all further

power over it by an adjournment of the term.    There is nothing counter to this in *De Castro* v. *Richardson*, or *Willson* v. *McEvoy*, 25 Cal. 49 and 169.    In the latter case the District Court had denied a motion for new trial and then adjourned for the term.    At the next term a motion was made to set aside the order, and we held that the Court had lost jurisdiction of the case, for the obvious reason that the order denying a new trial was a final disposition of the case, and there was nothing left pending and undetermined which could carry it over to the next term.    In the former the Court had made an order extending the time for preparing a statement on motion for a new trial, and at the subsequent term a motion was made to amend the order so as to include the notice of intention to move for a new trial, which the party had failed to serve within the statutory time, under the impression, as claimed, that the notice of motion was also embraced in the order of the previous term.    There was nothing in the record to amend by, and we held that the Court could not therefore at a subsequent term enlarge the order.    Both cases are readily distinguished from this.    The motion here is made before final judgment and is not to amend the record of a previous term.

But the appellant's case, so far as it rests upon any supposed errors of the Court in setting aside the default, is fully answered by the fact that the default itself was utterly void, and the defendant and the Court were at liberty to so regard it.    The Clerk in entering defaults exercises no judicial functions, but acts merely in a ministerial capacity, and unless he confines himself strictly within the statute his acts can have no binding force.    (*Stearns* v. *Aguirre*, 7 Cal. 443 ; *Kelly* v. *Van Austin*, 17 Cal. 564 ; *Glidden* v. *Packard*, 28 Cal. 651.) In cases like the present the Clerk is authorized to enter the default of the defendant only where he has failed to file his answer within the time specified in the summons, or within such further time as may have been granted by the Court. In this case the order extending the time did not fix a date within which the answer must be filed, but in general terms postponed the time for answering until after the decision of

certain motions made by the defendant relating to the complaint. What further time the defendant was to have after the decision of the motions the order did not specify, obviously for the reason that it could not well be done owing to the nature of the case, and for the very sufficient reason that it was altogether unnecessary that it should be done, if at all, until after the motions were finally determined. From the nature of the motions, which were to strike out certain portions of the complaint and rule the plaintiff to an election between different counts, the defendant could not be expected to file his answer *eo instanti* upon their decision. That would have been impossible, for he would have necessarily required time to prepare his answer after he had learned the fate of his motions—whether decided for or against him. If the latter, he would be entitled to such time as the Court might then fix; or in case the Court prescribed no time, he would be entitled to a reasonable time after notice of the decision, which by analogy would be the time allowed by the statute for answering in other cases. If the former, the plaintiff would have to make his election and serve notice thereof on the defendant, and regularly he should serve him with a copy of the complaint in its new form at the same time. Until then the defendant could not prepare his answer, and in the absence of any order requiring him to answer in a less time, he would be entitled to the time allowed by the statute in other cases. The notice of election was served on the 30th of March, and on the 3d of April following, on motion of the plaintiff, the Clerk entered the default of the defendant. Assuming that the Clerk had any power at all to enter a default in a case situated as this was, which is at least doubtful, he certainly had no power to do so at the time he made the entry. Under the circumstances, as already shown, the defendant had at least until the expiration of ten days from the 30th of March to file his answer. The default was therefore a nullity, and might have been disregarded for all the purposes of the case; but as it encumbered the record, the defendant was entitled to have it removed, and the Court was authorized to remove it

upon a bare suggestion, without doing more than calling the attention of the plaintiff to its action, and without any affidavit of merits on the part of the defendant.

II. The Court did not err in striking out a portion of the complaint. If the portion stricken out was inserted by way of description, as claimed, it was nevertheless not needed for that purpose, and, moreover, was blended with matters of evidence which never can be tolerated in a pleading. (*Coryell* v. *Cain*, 16 Cal. 567 ; *Green* v. *Palmer*, 15 Cal. 411.)

III. Nor did the Court err in refusing to strike out the defendant's answer because it was not signed by the defendant or his attorney of record. The name of the attorney who first appeared in the case was at the foot of the answer, in connection with the name of other counsel. This was sufficient for the Court, and the Court was not bound to try the question whether the signature was genuine or put there by associate counsel without any express authority. There is nothing in the case of the *Commissioners of the Funded Debt of San José* v. *Younger*, 29 Cal. 147, which is counter to this view.

IV. Nor did the Court err in not ruling the defendant to an election between the denials of his answer and the separate defense of the Statute of Limitations. A defendant may deny the title of the plaintiff and also plead the statute. Such are not inconsistent defenses even within the rule as contended for by counsel. (*Bell* v. *Brown*, 22 Cal. 671.)

V. Nor did the Court err in allowing the defendant to prove abandonment of the premises by the plaintiff, because an abandonment was not pleaded. Where the strict legal title is not involved, and the plaintiff relies upon a right to recover founded upon a naked possession, the defendant may defeat a recovery by proving that the premises were abandoned by the plaintiff before the alleged entry of the defendant, and were therefore at the time of the entry *publici juris*, and he may do this under a simple denial of the plaintiff's right to the possession. In such case the issue is: Was the plaintiff entitled to the possession at the date of the defend-

ant's entry? and anything which shows that he was not is but matter in rebuttal, and competent evidence for the defendant under the general issue, upon the same principle that the defendant may defeat a recovery where the plaintiff relies upon strict title, and there is only the general issue by showing that the plaintiff has conveyed to him or a third party and the title is still outstanding.

VI. The defendant was not estopped by the judgment in Miller's action against him for an unlawful detainer of the premises from showing a prior possession in himself. The estoppel against a tenant in favor of his landlord's title does not endure longer than the tenant's possession under the lease. After the possession has been restored to the landlord the tenant is released from the estoppel, and if he has a paramount title he may bring it forward. (*Doe ex dem Knight* v. *Lady Smithe*, 4 M. & S. 348; *Jackson ex dem Shaw* v. *Spear*, 7 Wend. 401; *Glen* v. *Gibson*, 9 Barb. 634; *James* v. *Landon*, 1 Croke, 36.) The judgment in question was only conclusive upon the questions in issue, which were: First—Whether there was a lease, and, second, whether the defendant had refused to surrender possession at the end of the term. The title was not and could not, from the nature of the case, be put in issue in that action, and herein lies the distinction between this case and *Jackson* v. *Rightmyer*, 16 John. 314, which was an action of ejectment.

VII. We think, however, that the Court erred in excluding the evidence offered by the plaintiff upon the question of abandonment. The fact that he was inexperienced in farming and relied upon the advice of Crane and Lando, and that they advised him to allow the land to lie fallow, would tend at least to explain why the plaintiff did not cultivate the land. It may have been entitled to but little weight as evidence, but if it was competent, and we think it was, he was entitled to its benefit. So also in regard to his efforts to procure the passage of the Act to prevent the re-entering of parties dispossessed by legal process. If he could connect those efforts

26

with the facts of this case he was entitled to prove them as tending to rebut the alleged abandonment. Upon a question of abandonment, as on a question of fraud, a wide range should be allowed, for it is generally only from facts and circumstances that the truth is to be discovered, and both parties should be allowed to prove any fact or circumstance from which any aid for the solution of the question can be derived.

Judgment reversed and a new trial ordered.