CHICAGO AND ERIE RAILROAD COMPANY *v.* HOFFMAN
ET AL.

[No. 9,543. Filed April 4, 1918.]

1. EMINENT DOMAIN.—*Taking Railroad Right of Way.—Compensation.—Future Damages.*—The purchase of a railroad company from the owner of an additional right of way to be used in building a second track did not settle or adjust future damages from increased drainage on the grantor's land resulting from the construction of such track, where at the time of the purchase the grantor did not know and could not reasonably have anticipated that the contemplated improvements would cause the diversion of drainage complained of; the rule being that the price paid for a railroad right of way settles future damages applying only to damages which might reasonably be expected to result from the conveyance and the construction and maintenance of the road in a proper and lawful manner. p. 289.

2. EMINENT DOMAIN.—*Right of Way Dividing Farm into Separate*

*Tracts.—Condemnation Proceedings.—Measure of Damages.—* Where a farm located on both sides of a railroad right of way was owned and operated as one farm by the owner prior to and at the time of a condemnation proceeding by a railroad to appropriate additional land for drainage purposes under §929 *et seq.* Burns 1914, Acts 1905 p. 59, the measure of damages was the difference in the value of the entire tract before and after the change in drainage; and such rule for the determination of damages was not affected by the fact that the owner purchased part of the land from the railroad with knowledge that it was double tracking its road, which improvement necessitated the appropriation of land involved for drainage purposes. p. 290.

3. EMINENT DOMAIN.—*Right of Way Dividing Farms into Separate Tracts.—Jury Question.—*In a condemnation proceeding by a railroad to appropriate additional land on which to build a second track, whether a farm, which was on both sides of the right of way and consisted of contiguous tracts, was held and operated as separate units or as a single farm was a question of fact for the jury. p. 290.

4. EMINENT DOMAIN.—*Damages.—*Where defendant's 178-acre farm, which was divided into separate tracts by a railroad right of way, was operated by him as one farm, and the increased flow of drainage water onto one tract, because of changes in the railroad grade, depreciated the value of the land from about $90 to about $85 an acre, damages of $600, awarded in proceedings by the railroad to condemn land for drainage purposes were not excessive. p. 294.

From Fulton Circuit Court; *Smith N. Stevens,* Judge.

Action by the Chicago and Erie Railroad Company against Charles H. Hoffman and another. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*W. O. Johnson* and *Holman, Bernetha & Bryant,* for appellant.

*R. R. Carr* and *C. C. Campbell,* for appellees.

FELT, J.—This is a proceeding by appellant against appellees to condemn real estate for drainage purposes in pursuance of §929 *et seq.* Burns 1914, Acts

1905 p. 59. The error assigned is the overruling of appellant's motion for a new trial.

Appellee Charles H. Hoffman owned the land sought to be appropriated, and Carrie N. Hoffman is his wife. Omitting formal averments, the complaint in substance shows: That appellant sought to condemn and appropriate certain real estate owned by Charles H. Hoffman, for its use as an easement. "That said company intends to use said real estate for the right of way of its railroad, roadbed and tracks, including side tracks and switches, turnouts and water stations, materials for construction purposes sufficient to enable the plaintiff to construct and repair its railroad, and for making proper drains for its said right of way and roadbed. That the plaintiff and defendant were unable to agree for the purchase of said land, or an interest therein, or other property or right. That for the past two years said company has been engaged in building a second track of railroad upon its right of way through Fulton county, and other counties in this state, and over and upon the lands of the defendant. That in the construction of its second track, deep excavations were often required to be made and heavy fills required at other places in order to establish a uniform grade, or what is known as a reduced grade, which became necessary for the efficiency of said railroad and for the operation thereof; that in consequence thereof the drainage of the right of way was changed to the extent that the drainage along the single track became wholly insufficient in carrying off the water from the right of way precipitated in large quantities during heavy rains on said right of way; that in order to meet the new conditions arising from the improve-

ment of its railroad and the building of its drainage over and through defendants' land, not only to protect said right of way and improvements, but all abutting landowners, that a change and enlargement of the system of drainage is imperative and necessary to the safety and usefulness of said railroad as well as for the benefit of the defendant and other adjacent landowners, to have a right of way over defendants' land to enable. said company to construct and repair its road and a right to conduct the water, and the right of making proper drains.''

The complaint further shows the existence of two public ditches, duly established; that one of them is known as the Spera ditch, and the other as the Harsh ditch, the latter being the outlet of the former; that appellant was assessed benefits on the Spera ditch, which begins north of the company's right of way, crosses under its tracks, and empties into the Harsh ditch at the south line of the public highway running east and west and upon the lands of said Hoffman; that appellant is enlarging the Spera ditch to carry off additional water accumulated as the result of double tracking and reducing the grade of appellant's road which crosses the Spera ditch; that the specific purpose of this appropriation is to provide a more efficient outlet for said drainage on the lands of defendants, not to destroy the Harsh ditch, but to clean out and enlarge the same to sufficient capacity to carry off the water emptied into it from the Spera ditch, ''and to create an easement thereon so that said company can effectually maintain necessary drainage for the protection of its right of way and the operation of its railroad''; that an ineffectual effort to reach an agreement with appellees as to the damages, if any

occasioned by the proposed appropriation had been made; that the property to be condemned has been duly surveyed and located as shown by ''Exhibit A'' filed with the complaint.

Appraisers were duly appointed, who reported that there was no value to the real estate to be appropriated, and that no damages resulted to the residue of appellee's land, by reason of the appropriation. Appellees excepted to the report so made and alleged that they were damaged by the appropriation in the sum of $2,000. A trial by jury resulted in a verdict for appellees in the sum of $600. Appellant's motion for a new trial was overruled.

A new trial was asked on the ground that the court erred in the admission of certain evidence and in the giving and refusal of certain instructions; that the assessment of the amount of recovery is erroneous, being too large; that the verdict is not sustained by sufficient evidence, and is contrary to law.

Without substantial conflict in the evidence, it appears that at the time this proceeding was instituted, appellee Charles H. Hoffman owned 178 acres of real estate in Fulton county, Indiana, 115 acres of which lay north, and 63 acres south, of appellant's railroad. Long prior to filing its instrument of appropriation in this case, appellant purchased from appellees the right of way for its double-track road off of the 115 acres aforesaid, and appellee purchased from appellant twenty-three acres of real estate south of the railroad. Appellee also owns about forty acres south of the railroad right of way, through which the Harsh ditch runs. The original line of single track railroad was built in 1881 and the right of way for double tracking the road was procured in 1912 and 1913, at

which time appellant purchased from appellee three or four acres north of and adjoining its tracks. Appellant also acquired a tract of land from other parties south of its road and subsequently conveyed a part of it to appellee, the same being the twenty-three acres aforesaid; but for the railroad appellee's land would be contiguous. He operates it as one farm.

There is also evidence tending to prove that about six months after appellee had purchased the twenty-three acres, and some two years after appellant acquired three or four acres from appellee for right of way as aforesaid, appellant instituted this proceeding to provide additional drainage which it found to be necessary; that the changes appellant was making in its road, besides double tracking, involved cutting down a very high grade for a distance of about two miles and lowering it from twenty to thirty-two feet. The change in grade resulted in a change in the flow of surface water, the collection of water from a highway, for about eighty rods of its length and the collection of water from fifty to eighty acres of real estate, that formerly, and naturally, flowed in the opposite direction to other and different outlets, and the flowing of such waters along appellant's right of way and turning the same upon appellee's land. By such changes in grade and ditches, appellant brought large quantities of additional waters so gathered and accumulated as aforesaid, along and across its right of way, down steep grades to a point opposite the lowest part of appellee's land, where it made an opening through its embankment; placed large tile therein, and discharged the water with increased concentration and greater force, and thereby caused the same to flood appellees' land after every hard rain.

The evidence also tends to show that appellee had sufficient outlet for the drainage of his land through the original Harsh ditch, and that after he purchased the twenty-three acres from appellant, he had drained it; that several tile ditches on his land emptied into the Harsh ditch, and after the changes aforesaid, and the enlargement of the Harsh ditch, dirt was washed into it by the increased quantity and flow of water, and it was filled up so as to cover the outlets for the tile drains of appellee aforesaid; that the enlarged ditch was made sixteen or eighteen feet wide but was not deepened; that about six acres of appellees' land frequently overflowed and was rendered unfit for cultivation, after the new ditch was constructed, and the increased flow of water was turned into the channel; that it had not overflowed prior thereto except, on one occasion of an exceptional rainfall; that the land was worth about $90 per acre before the change in the drainage and about $85 per acre after the new system was constructed and in operation.

The deeds for the right of way to the railroad are not in evidence, and there is nothing to show that in acquiring the right of way for the double-track road, the grantors were informed, or knew, that the grade was to be lowered as above indicated, or that the improvements contemplated would in any material sense change the direction of the flow of water or increase the volume or velocity of water discharged upon appellee's land. Appellee testified that appellant simply bought from him three or four acres along and adjoining its right of way on the north, to be used in laying its double track, and "that is all that was said about it."

Witnesses were permitted to testify to the fair mar-

ket value of the 178 acres, considered together as one farm, both before and subsequent to the appropriation for drainage purposes, and the construction of the enlarged ditch.

Appellant objected for the reason that the twenty-three acres were purchased by appellee from appellant after it had begun double tracking its road, which fact was known to him, and he took the land subject to the right of the company to make the improvement, and any damages resulting therefrom were included in the purchase price; that the 178 acres is not shown to be contiguous and to constitute one farm; that appellant seeks only an easement across thirty-eight acres south of the railroad, and the damages recoverable would be limited to the land through which the easement is acquired. The objection was overruled by the court and appellant reserved an exception.

Appellees knew when they acquired title to the twenty-three acres south of the railroad that appellant was proposing to double track its road, for they had previously executed a conveyance of a right of way for that purpose, but there is nothing to show that appellees had any special knowledge of the change in the grade, the effect upon drainage or existing ditches, or that there were any special agreements between the parties relating to any of such questions.

The evidence tends to show that appellees' buildings were north of the railroad, and that after he acquired title to the twenty-three acres from appellant he operated the entiré 178 acres as one farm, and that he so owned and operated it prior to the institution of the proceedings involved in its appeal; that the 178 acres were contiguous except as affected by the railroad. Therefore, for the purposes of the question

presented, the situation is not different from what it would have been had appellant acquired its railroad right of way through appellees' land by appropriation proceedings under the statute without any special agreement or limitations in regard thereto, other than the fact that the right of way so procured was to be used in double tracking its road. *Roushlange* v. *Chicago, etc., R. Co.* (1888), 115 Ind. 106, 17 N. E. 198.

Appellant does not contend that the owner of the land appropriated for drainage purposes is precluded from having the question of his damages, if any, determined in this proceeding, because of the fact that appellant had previously acquired a right of way through appellees' land for its double-track road, but it contends that the error complained of is shown by the fact that appellee had already been paid for such drainage easement in so far as the twenty-three acres are involved, and that only the thirty-eight acres south of the railroad through which the enlarged ditch runs, should be considered in determining the damages in this case.

The general rule is that the price paid for a railroad right of way, or the damage assessed in condemnation proceedings for such purpose, settle 1. and adjust, once for all, both present and future damages of every kind and character which might reasonably be expected to result from such appropriation or conveyance, and the construction and maintenance of the road in a proper and lawful manner. But it does not follow from this rule that the damages resulting from the drainage contemplated by this proceeding were settled and adjusted by the transaction in which appellee acquired from appellant title to the twenty-three acres aforesaid.

There is nothing to indicate that such drainage was contemplated at that time, and it cannot be held, as against appellee, on the facts of this case, that the damages resulting to his land by the change in the drainage system, as heretofore indicated, could reasonably have been expected to result from the double tracking of appellant's road. *Cleveland, etc., R. Co.* v. *Griswold* (1912), 51 Ind. App. 497, 502, 97 N. E. 1030; *Cleveland, etc., R. Co.* v. *Hadley* (1912), 179 Ind. 429, 439, 441, 101 N. E. 473, 45 L. R. A. (N. S.) 796; *Cleveland, etc., R. Co.* v. *Smith* (1911), 177 Ind. 524, 543, 546, 97 N. E. 164; *Roushlange* v. *Chicago, etc., R. Co., supra.*

As already indicated, the evidence tended to show that the tracts comprising the 178 acres were owned and managed as a single farm by appellee 2. prior to and at the time this proceeding was instituted. Such being the case, the court did not err in receiving evidence as to the value of the farm in its entirety, both prior and subsequently to the appropriation and establishment of the enlarged ditch and the change in the drainage system. *Cleveland, etc., R. Co.* v. *Smith, supra; Chicago, etc., R. Co.* v. *Huncheon* (1892), 130 Ind. 529, 533, 30 N. E. 636.

Whether a farm consisting of contiguous tracts is held and operated as separate units, or as a single farm, is a question of fact to be determined 3. like any other such question from the evidence in the case. *Cleveland, etc., R. Co.* v. *Smith, supra.*

The court in this case by its instructions submitted the question to the jury as one of fact to be determined from the evidence, and, in instructing as to the measure of damages, informed the jury that if they

found from the evidence that the 178 acres consisted of parts that were contiguous, and that appellees used such tracts as one farm, then they would be authorized to assess damages to the farm as a whole by reason of the appropriation and improvement set out in the complaint. Also, that if they did not so find, but found that a part only of such farm was damaged by the proposed improvement, they should assess damages, if any, only on the part so affected. Also, that the measure of damages was the difference, if any, in the fair cash value of the land so affected just before and after the change in the drainage system aforesaid.

At the request of appellant the court also instructed the jury that, if the fair market value of appellee's land was as much after as before the improvement was made, appellee could not recover, and the verdict should be for appellant.

The appellant also claims that the court erred in its instructions and gave the jury an erroneous idea of the proceeding, and especially as to the easement or right appellant sought to establish. Also, that the damages were not properly limited and included as an element the effect upon defendant's farm, as a whole, caused by such improvement and drainage, and not merely that caused by the additional water, if any, turned upon appellant's land by the improvement, which had not previously flowed into the Harsh ditch.

The instructions seem to present the case fairly and fully as to all the parties. The court gave a number of instructions requested by appellant, and among them the following:

"No. 2. The court instructs you that if you find

from the evidence that the Chicago & Erie Railroad Company purchased of Sylvester Churchill and Charles E. Stephey tracts of land adjoining plaintiff's right of way for right of way purposes and sold to Charles Hoffman so much of said real estate so purchased of said Churchill and Stephey as remained after the strips needed for the construction of plaintiff's double track was taken out and said Charles H. Hoffman purchased said Churchill and Stephey land with knowledge that said double track was to be constructed on said strips purchased of Churchill and Stephey, then said Hoffman could not recover any damages which resulted or might reasonably result from the proper construction of the Chicago & Erie Railroad Company's double track thereon.   *   *   *

"No. 3.  The court instructs you that under this proceeding the only interest the Chicago & Erie Railroad Company can acquire in the ditch running over and across the defendant, Hoffman's, land is a mere easement; said Hoffman remains the owner of the land and subject to the use of said drain by the plaintiff, said Hoffman may make all lawful use of his land and said defendant, Charles Hoffman, would not be entitled to recover in this action as damages for land taken, the value of any land, as no land is taken by the plaintiff.   *   *   *

"No. 4.  The plaintiff, Chicago & Erie Railroad Company, would not be liable to defendant, Hoffman, for any injury or damage to him from water that naturally flowed into the Spera Ditch, or Harsh Ditch, constructed by order of court, off the lands or the right of way of the Chicago & Erie Railroad Company, and you should not assess any damages for an injury or damage to defendant, Hoffman's, lands oc-

casioned by the natural flow of water through public drains or natural water courses across plaintiff's right of way to Hoffman's land. * * *

"No. 6. You should not assess any prospective damages against the plaintiff, Chicago & Erie Railroad Company, which may arise in the future from the happening of some possible but uncertain event; the defendant, Hoffman, has the burden of proving by a preponderance of the evidence that he is damaged by the improvement made by the Chicago & Erie Railroad Company respecting drainage, and that the damage was such as would or did naturally and ordinarily result from, or was incident to the improvement and if defendant, Hoffman, has failed to prove by a preponderance of the evidence that he has been so damaged, your verdict should be for the plaintiff, Chicago & Erie Railroad Company."

The case was tried on the theory advocated by appellant, except as to the consideration of the farm as a whole, and this question was properly submitted to the jury as one of fact.

Appellant sought and obtained a change in the drainage system and an enlarged outlet to carry off the additional waters accumulated thereby.

The evidence shows that water was collected by appellant from territory that naturally drained elsewhere; that it was drained through artificial channels, with increased velocity and volume, and discharged through a thirty-inch tile laid under appellants' roadbed, into an open ditch which ran through appellees' land; that such ditch overflowed frequently, was filled up so as to interfere with tile drains emptying into it, and that a portion of appellees' land was damaged by the water, which prior to such

change in the drainage system and the ditch on appellees' land, had not been subject to overflow.

The proceeding was under and in pursuance of the statute, §929 *et seq.* Burns 1914, *supra.* On the theory presented by the pleadings and by the instructions tendered by appellant, the case seems to have been fairly tried on its merits, and a correct result reached. There is evidence tending to support the verdict, and the damages awarded are not excessive. *New Jersey, etc., R. Co.* v. *Tutt* (1906), 168 Ind. 205, 214, 80 N. E. 420; *Toledo, etc., R. Co.* v. *Wilson* (1909), 44 Ind. App. 213, 217, 86 N. E. 508, 88 N. E. 864; *Baltimore, etc., R. Co.* v. *Quillen* (1904), 34 Ind. App. 330, 334, 72 N. E. 661; *Pittsburgh, etc., R. Co.* v. *Atkinson* (1912), 51 Ind. App. 315, 323, 97 N. E. 353; *Cleveland, etc., R. Co.* v. *Griswold, supra; Culbertson* v. *Knight* (1898), 152 Ind. 212, 125, 52 N. E. 700. The question of appellant's right to acquire an easement in a public ditch already established is not presented, considered or decided in this case.

We have in effect considered all the questions duly presented, and find no error prejudicial to appellant's rights. Judgment affirmed.

NOTE.—Reported in 119 N. E. 169. See under (1) 22 Am. St. 51, 15 Cyc 705, 715; (2) 15 Cyc 704; (3) 15 Cyc 873; (4) 15 Cyc 908.